This is a case involving the construction and application of the administrative regulations of the Alabama Medicaid Agency (Agency) pertaining to nursing home reimbursement.
Beverly Enterprises (Beverly), a corporation which owns and operates nursing homes, sought reimbursement under the Alabama Medicaid program for the cost of "imputed interest" it incurred in purchasing eleven nursing homes in Alabama. Following an administrative hearing, the hearing officer recommended that the Agency reimburse Beverly for the imputed interest cost. The Agency's commissioner, however, did not accept that recommendation and denied reimbursement.
Beverly appealed the denial to the Montgomery County Circuit Court, pursuant to the Alabama Administrative Procedure Act (AAPA), Ala. Code (1975), §§ 41-22-1 through -27 (1982 Repl.Vol.). The circuit court reversed the Agency's denial and held that Beverly should be reimbursed for its imputed interest cost.
On appeal to this court we reversed and remanded the judgment of the circuit court because it had failed to explain in writing the reasons for reversing the Agency action, as required by Ala. Code (1975), § 41-22-20(l). Alabama MedicaidAgency v. Beverly Enterprises, 504 So.2d 1211 (Ala.Civ.App. 1987). On remand the circuit court entered a detailed final judgment for Beverly.
The Agency appeals. We affirm.
The record reveals that, in 1982 when Beverly purchased eleven nursing homes in this state, it received very favorable financing on the acquisition. It created a debt to the sellers at an interest rate substantially below market interest rates at the time. The majority of the financing, however, was accomplished through Beverly's assumption of outstanding bonds by which the construction of the nursing homes had been financed, and these bonds also bore *Page 1331 
interest rates substantially below the then prevailing market rates.
Beverly contends (and the Agency does not appear to dispute) that, to obtain such favorable financing on the purchase of the nursing homes, it had to pay a higher purchase price, i.e., it had to a pay premium for the below-market financing.
Beverly claims that the value of the below-market financing is an intangible asset which it has labeled "imputed interest." It has amortized the cost of obtaining "imputed interest" — the higher purchase price — and contends that this amortized expense is reimbursable under the Alabama Medicaid program, along with the "return on equity" associated with imputed interest.
The Agency not only contends that Beverly's imputed interest expense is not reimbursable, but it also disagrees with Beverly's characterization of imputed interest as an intangible asset. While the Agency's argument is not entirely clear to this court, it appears that what the Agency refers to as imputed interest is not the below-market financing itself, but the premium paid to acquire the below-market financing. It characterizes this premium, which it seems to refer to as imputed interest, as nothing more than a type of interest expense, and it contends that such expense is not reimbursable under the Alabama Medicaid program.
The circuit court agreed with Beverly's characterization of imputed interest as an intangible asset. We do not, however, find it necessary to resolve this definitional dispute in order to address the primary issue before this court. That issue is whether the circuit court erred under the AAPA in reversing the Agency's decision to deny reimbursement.
To resolve this issue it is necessary to look to the standard of review under the AAPA and then to the final Agency action or decision which was the subject of review in the circuit court. In doing so, we will assume for purposes of this appeal that the Agency's characterization of imputed interest as an interest expense is correct.
Judicial review of the Agency's determination regarding reimbursement is quite limited under the AAPA. Ala. Code (1975), § 41-22-20(k), provides that the Agency's order is to be taken as prima facie just and reasonable. The circuit court may not substitute its judgment for that of the Agency as to the weight of the evidence. Moreover, the circuit court may reverse the Agency's decision only "if substantial rights of [Beverly] have been prejudiced because the [A]gency action is:
 "(1) In violation of constitutional or statutory provisions;
 "(2) In excess of the statutory authority of the agency;
"(3) In violation of any pertinent agency rule;
"(4) Made upon unlawful procedure;
"(5) Affected by other error of law;
 "(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 "(7) Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."
Ala. Code (1975), § 41-22-20(k).
In entering judgment for Beverly on remand, the circuit court held that, in disallowing reimbursement for Beverly's imputed interest expense, the Agency commissioner had acted arbitrarily and capriciously and had abused her discretion and that the commissioner's action was clearly erroneous and in violation of governing law.
After a careful study of the final Agency action (the commissioner's two-page letter/decision denying reimbursement), the record, and the applicable law and regulations, we cannot hold that the circuit court erred in finding that the commissioner had acted arbitrarily and capriciously.
As already noted, the commissioner rejected the findings and recommendations of the hearing officer in denying reimbursement for Beverly's imputed interest expense. As the basis for her decision she principally relied upon Rule 560-X-22-.11(1) of the Agency's Administrative Code, which she concluded the hearing officer had misconstrued. *Page 1332 
Rule 560-X-22-.11(1) provides in pertinent part: "Necessary and reasonable interest expense is an allowable cost. In order to be considered necessary, the interest must beincurred on a loan made to satisfy a financial need directly related to patient care." (Emphasis supplied.)
The primary basis for the commissioner's determination that Beverly's imputed interest expense was not reimbursable was her conclusion that such expense had not actually been incurred, or paid, on a loan, as required by Rule 560-X-22-.11(1). She apparently concluded that such expense was a fictitious obligation and that imputed interest was "merely an asset created by accountants in their attempt to comply with accounting principles designed for financial disclosure purposes." As such, the commissioner stated that the expense associated with this "bookkeeping entry" also failed to meet the requirement of Rule 560-X-22-.11(1) that it be necessary and reasonable, as well as the requirement of Rule560-X-22-.02(3)(b) that it be reasonable on its own merit.
We think that the circuit court could reasonably conclude based upon the record before it that the commissioner's determination that Beverly's imputed interest expense was not reimbursable because it did not meet the requirements of Rule 560-X-22-.11(1) was arbitrary and capricious. Specifically, we think the circuit court could reasonably have concluded that her limited construction of the terms "incurred" and "necessary and reasonable" as used in the rule to prevent reimbursement was an arbitrary and capricious action.
The language used in an administrative regulation should be given its natural, plain, ordinary, and commonly understood meaning, just as language in a statute. See Alabama PrecastProducts, Inc. v. State Department of Revenue, 332 So.2d 160
(Ala.Civ.App.), cert. denied, 332 So.2d 164 (Ala. 1976). In addition, however, one should construe such language by looking at the entire regulation, rather than at just an isolated clause or paragraph. Cf. Alabama Farm Bureau Mutual CasualtyInsurance Co. v. City of Hartselle, 460 So.2d 1219 (Ala. 1984);Mitchell v. State Child Abuse Neglect Prevention Board,512 So.2d 778 (Ala.Civ.App. 1987). We think the latter rule is particularly appropriate in a case such as the present, where the regulations one is attempting to construe are of such a complicated nature.
Rule 560-X-22-.11 appears to be the Agency's regulation which addresses the reimbursement of a nursing home provider's interest expense in general. While the rule does not specifically address imputed interest, we think it clearly contemplates such an animal, i.e., it contemplates an interest expense which is not incurred or paid in an ordinary manner.
Paragraphs (2) and (3) of Rule 560-X-22-.11 specifically recognize that bond premiums or discounts will be treated as interest and will be amortized over the life of the issue, as Beverly apparently amortized its imputed interest expense in this case. Clearly, these paragraphs foreclose the restricted interpretation given by the commissioner to the term "incurred" as used in paragraph (1) of Rule 560-X-22-.11.
While the commissioner took the position that imputed interest was merely a created fictitious obligation and thus not incurred, it is clear from the record that such an expense was quite real. Moreover, both in its brief and during oral argument it was quite clear that the Agency recognized the price Beverly paid to acquire below-market financing as a real expense.
It is also significant that the manner in which Beverly accounted and reported its imputed interest expense to the Agency was an effort to comply with the Agency's own regulations which encourage, if not require, providers to use generally accepted accounting principles in reporting assets and liabilities. See Rule 560-X-22-.16(5). See also Rules560-X-22-.02(3)(a) and -.03(4). In its brief before this court, the Agency in fact concedes that imputed interest is a matter of generally accepted accounting principles.
Thus, one might describe the situation in which Beverly found itself as a "catch-22." The commissioner determined that imputed interest was not necessary and reasonable, as required by Rule 560-X-22-.11(1) or reasonable on its own merit, as required by Rule 560-X-22-.02(3)(b) because it was *Page 1333 
"created by accountants in their attempt to comply with accounting principles designed for financial disclosure purposes." Yet it was the Agency's own accounting principles with which Beverly was attempting to comply in creating or labeling its real expense as imputed interest.
We would further note that the commissioner ignored two decisions of the Provider Reimbursement Review Board, St.John's Hospital Health Center v. Blue Cross, 1979 Medicare and Medicaid Guide (CCH) ¶ 29,436 at 9212 (September 29, 1978) and Las Olas General Hospital v. Blue Cross 1979 Medicare and Medicaid Guide (CCH) ¶ 30,156 at 10,057 (October 4, 1979), in which imputed interest expense was held to be reimbursable under Medicare. Although in its brief the Agency takes the position that these two decisions are not Medicare principles of reimbursement applicable to Medicaid, during oral argument counsel for the Agency stated in response to a question by this court that decisions of the Provider Reimbursement Review Boardare binding upon the Agency.
In view of the totality of the circumstances, we cannot say that the circuit court erred in concluding that the final Agency action was arbitrary and capricious and thus due to be reversed under the AAPA.
We do not wish to be understood as limiting the Agency's discretion to determine what provider costs are reimbursable under the Alabama Medicaid program. Clearly, the Agency does have quite broad discretion in this regard. See Alabama State Plan, Attachments 1.2-B and 4.19D; Rule 560-X-22-.02.
Nor should we be understood as elevating the importance of the findings and recommendations of the hearing officer. It is the Agency's commissioner who has the authority to make the final determination for the Agency, and the hearing officer's recommendations are in no way binding upon the commissioner.See Alabama Medicaid Agency v. Norred, 497 So.2d 176
(Ala.Civ.App. 1986).
In making that final determination, however, the commissioner's discretion is not unbridled. She must have some reasonable justification for her determination or base it upon adequate principles or fixed standards so that it will not be arbitrary or capricious. See Alabama Department of PublicHealth v. Perkins, 469 So.2d 651 (Ala.Civ.App. 1985); Sextonv. Tuscaloosa County Civil Service Board, 426 So.2d 432
(Ala.Civ.App. 1983).
We hold simply that the record before the circuit court was such that it could reasonably conclude that the commissioner's determination was not reasonably justifiable or founded upon adequate principles and that it was thus arbitrary and capricious.
In view of the above, the other issues raised by the parties are pretermitted. We would note, however, that the Agency has presented several theories in support of its denial of reimbursement for Beverly's imputed interest expense. Some of these were apparently presented for the first time on appeal, and, even during oral argument, the Agency surprised this court with further new theories in support of its position. Contrary to Beverly's assertions, it is our opinion that an appellant may present new theories in support of its position for the first time on appeal.
Nevertheless, such new theories are not particularly helpful and may even complicate the issues in a case such as this where the subject of review under the AAPA is the final Agency action or order. As such, the circuit court, as this court, was required to look to the commissioner's decision and the reasons she gave for denying reimbursement. Where such decision is shown to be arbitrary and capricious, no post hoc rationalizations or theories for denying reimbursement can correct it.
This case is due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and INGRAM, J., concur. *Page 1334