I agree with the Personnel Board's determination that Hardeman was denied due process when he was not timely notified of his pretermination hearing. In Stallworth v. City of Evergreen,680 So.2d 229 (Ala. 1996), our supreme court held that the employee's pretermination hearing was flawed and that the posttermination hearing "could not have remedied the earlier deprivation of [the employee]'s *Page 1181 
right to a constitutionally adequate pretermination hearing. . . ." 680 So.2d at 235. In footnote 1 inStallworth, the supreme court addressed whether theindependent due-process requirement of an adequateposttermination hearing was met under the particular facts in Stallworth, and the court determined that the posttermination hearing was also flawed. Because theStallworth court held that "no matter how fair and adequate the procedures at the post-termination hearing may be, the initial decision made after the pretermination hearing inevitably will have diminished significantly the employee's chances of prevailing at the posttermination hearing," 680 So.2d at 235, I agree that Hardeman was denied due process.
However, I disagree with the main opinion's conclusion that Alabama Public Television ("APT") had sufficient cause to dismiss Hardeman because Hardeman had reported late to work and had been sent home smelling of alcohol on one occasion during the three-year period before his dismissal. The record indicates that in September 2001 Hardeman, a 16-year employee of APT, met with his supervisor, Harvey Wilson, concerning his problem with alcohol and requested leave to attend a treatment facility. Robert Corley, director of APT, received a letter from an outpatient treatment facility regarding Hardeman's treatment. Hardeman submitted a leave request for the time periods of September 17, 2001 through September 21, 2001, and September 24, 2001, through September 28, 2001. Wilson granted Hardeman's leave request. Hardeman also submitted a leave request for October 1, 2001, through October 5, 2001, which was also granted. While Hardeman was on leave, he was contacted and told to attend a meeting on October 3, 2001, to discuss leave approval. At that meeting, Hardeman was informed that the purpose of the meeting was a "pretermination" hearing. On October 5, 2001, Hardeman was dismissed.
The administrative law judge, who heard the witnesses, found, in pertinent part, as follows:
 "Since the Employee is a classified Merit System employee, he has a property interest in his job and may not be dismissed from his job without cause. That cause must relate to the employee's performance of his job. Since the Employee has a property interest in his job and the job may not be taken away without cause, he is entitled to due process of law in taking away his job. Due process simply consists of notice of the charges against him, including a summary of the evidence against him, and an effective opportunity to respond to the charges. The Employee did not have such an opportunity. He had no advance notice of any charges and no knowledge he was involved in a pretermination hearing until he was well into the meeting with his supervisors. The Department contends the Employee did not request additional time to respond to the charges. The Employee says he was so `overwhelmed' by what was happening he did not think to ask for additional time. . . . The Employee was led to believe by the granting of some of his requested sick leave that he was to be allowed to complete his treatment program. The Department made no effort to schedule the Employee's leave at a time more convenient nor did it make any effort to work with the Employee to find a time where both interests could be accommodated. Instead, it led the Employee to believe his treatment was approved until `out of the blue' the Employee with no prior notice, found himself in a `pretermination' hearing. . . . Cause to terminate an employee is not found because the Employee requested *Page 1182 
sick leave. The Department always has the option to deny the use of sick leave if the employee was not in fact ill. The supervisor's belief he was not sincere in his desire might have provided a basis to deny the leave but apparently the only reason the Employee was fired was found after the Department received advice it could fire the Employee. The Department did not make a decision to deny Mr. Hardeman his requested sick leave. . . . He was on approved prior requested sick leave from September 17 until the date of his termination. The Department offers an excuse for the granting of that sick leave that it simply did not know what to do with him until they received specific advice as to whether they had to approve his leave. As stated earlier, the only fair thing for the Department to do with the Employee once they determined they were not required to grant his leave was to tell him his leave would not be granted past a date certain and he either had to return to work or be fired. The Department did not do that; they simply fired him. There is absolutely no question in my mind that this firing was fundamentally unfair.
 "The Department's purported reason for the denial of his requested leave was that the Employee had performance problems due to his alcohol use and prior treatment had failed. Additionally, his supervisors felt the Employee was `insincere' in his request to go to alcohol treatment. In fact, the evidence shows the Employee had received minor disciplinary actions on two occasions in two different years. There is no doubt the disciplinary action the Employee received when he reported to work smelling of alcohol is serious. However, the Department did not treat this workplace problem as particularly serious and only lowered his performance appraisal score in that year and gave him a reprimand. The only other disciplinary action the Department was able to show regarding the Employee was that in one year he had difficulty coming to work on time and called in and said he would be late. His supervisor, who supervised him for almost the entire 16-year history of his employment, said the Employee improved with this problem after he gave the Employee a warning. This must be true because there is no documentation by the Department to support the problem was not corrected. In other words, the Employee had a problem on one occasion and his supervisor spoke to him and administered disciplinary action for this problem, and the Employee corrected the problem. The problem with coming to work smelling like alcohol only occurred on one occasion and there is no evidence presented in this case the Employee did not respond to the disciplinary action meted out to him by his supervisor following that violation. The other difficulties with tardiness and/or attendance led to a written disciplinary action based on notes recorded by Mr. Wilson on his calendar. In essence, what we have is a 16-year State Merit System employee who had accumulated over 600 hours of sick leave and 400 hours of annual leave plus additional compensatory time, who has been accused by the Department of having an attendance problem. These facts simply do not support a serious attendance problem or tardiness problem.
 "There is absolutely no doubt the Employee has been `whipped' by his alcohol problem. The evidence in this case shows he attended alcohol treatment on at least one prior occasion, possibly twice, and the treatment had not solved his problem. The Employee's testimony in his hearing was that he had not consumed *Page 1183 
alcohol from September 8, 2001 until May 1, 2002. Whether the treatment he attended in the fall of 2001 will solve his problem is unknown."
While I recognize that the Personnel Board may reject the administrative law judge's findings, this court has stated:
 "`"[T]he Board may reject the [hearing officer's] findings, even though they are not clearly erroneous, if the other evidence provides sufficient support for the Board's decision. But it seems that the Board's supporting evidence, in cases where it rejects the [hearing officer's] findings, must be stronger than would be required in cases where the findings are accepted, since in the former cases the supporting evidence must be deemed substantial when measured against the [hearing officer's] contrary findings as well as the opposing evidence."'
 "[Personnel Board v.] King, [456 So.2d 80,] 82 [(Ala.Civ.App. 1984)] (quoting NLRB v. Interboro Contractors, Inc., 388 F.2d 495, 499 (2d Cir. 1967)) (emphasis added [in Mays])."
State Pers. Dep't v. Mays, 624 So.2d 194, 196 (Ala.Civ.App. 1993). I believe the circuit court was correct in concluding that the Personnel Board's decision violated § 41-22-20(k)(6), Ala. Code 1975, because that decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Therefore, I must respectfully dissent.